UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTHONY COVERT,<br><br>                Petitioner,<br><br>     v.<br><br>DONALD HOLBROOK,<br><br>               Respondent. | 2:14-cv-00220-SAB<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

The writ of habeas corpus ad subjiciendum originated in fourteenth century England and was described as the "most celebrated writ in the English law" by Blackstone. *See Habeas Corpus Jurisdiction in the Federal Courts*, Federal Judicial Center, *available at http://www.fjc.gov/history/home.nsf/page /jurisdiction_habeas.html*. In the United States, at the constitutional convention, the delegates declined to incorporate an affirmative guarantee of the writ into the Constitution, but did include Article I, § 9, Clause 2 which states "the Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." *See* Max Rosenn*, The Great Writ-A Reflection of Societal Change,* 44 Ohio St. L.J. 337, 340 (1983).

The Judiciary Act of 1789—the act that established the federal court system—explicitly gave federal courts the power to issue the writ in Section Fourteen. Originally, federal courts could only issue the writ for prisoners in

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 1

federal custody and not for those held under state authority. *See Ex parte Dorr*, 44 U.S. 103, 104 (1845). Following the Civil War, Congress enacted the Habeas Corpus Act of 1867, which expanded the jurisdiction of federal courts making the writ available to state prisoners. Ch. 28, 14 Stat. 385. This expanded writ was a tool of reconstruction which Congress implemented, in part, to restrain some states from unconstitutionally holding former slaves in state prisons. *See* Rosenn at 341-342. Even after the Act of 1867, a Court reviewing a habeas petition could only inquire into whether the court which imposed the original sentence lacked jurisdiction. What constituted a jurisdictional defect for habeas purposes slowly evolved into a broader analysis of a petitioner's constitutional rights. *Id*. at 346. By the 1950s and 1960s, the expansion of habeas corpus jurisprudence reached its zenith. In *Brown v. Allen*, the Supreme Court held that federal district courts could review a claim for constitutional defects even if the state had already provided a full and fair hearing on the issue. 344 U.S. 433 (1953). In *Fay v. Noia*, the Court went further, holding that a failure to exhaust state remedies did not automatically foreclose relief in federal court. 372 U.S. 391 (1963).

Over the following decades, the Supreme Court decided a number of cases which narrowed its previous habeas corpus jurisprudence. *See e.g.*, *Teague v. Lane*, 489 U.S. 288 (1989); *Stone v. Powell*, 428 U.S. 465 (1976). Despite the more robust scrutiny of habeas petitions, the total number of petitions continued to grow—in large part due to the unprecedented increase in incarcerated individuals. *See Prisoner Litigation in Relation to Prisoner Population*, 4-2 CASELOAD HIGHLIGHTS 2, Sept. 1998, *available at* http://www.courtstatistics.org/~/media/ Microsites/Files/CSP/DATA%20PDF/Vol4Num2PrisonerLitigation.ashx.

In response to the strain habeas petitions put on federal court resources, federalism concerns, and other motivations, Congress passed the Antiterrorism and Effective Death Penalty Act in 1996 ("AEDPA"). AEDPA reformed how habeas petitions were treated in federal courts in five substantial ways. First, AEDPA

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 2

imposed a one-year statute of limitations for filing a habeas petition after a state judgment is final. 28 U.S.C. § 2244(d)(1)(A). Second, AEDPA permits a judge to deny a habeas petition on the merits, even when the petitioner had not yet exhausted his state court remedies. § 2254(b)(2). Third, the Act greatly limited when a federal judge can hold an evidentiary hearing. § 2254(e)(2). Fourth, a successive petition must be authorized by a court of appeals before a federal court can entertain it. § 2244(b). Fifth, AEDPA revised the standard of review which federal courts use when reviewing state court decision. § 2254(d). It is under this framework which the Court must review the instant petition.

### *Facts*

According to the facts recited by the Washington Court of Appeals, Petitioner arranged to meet two rivals in a supermarket parking lot in Spokane in order to fight. As the rivals drove by the store, Petitioner attempted to fire a gun at the car, however, the gun did not discharge because the safety was engaged. Petitioner and his companions returned to his apartment and made further arrangements to meet the rivals at a motel. Shortly thereafter, Petitioner and the rivals had a confrontation at a gas station near the motel. Petitioner fired several shots at his adversaries—leaving one severely wounded and the other unscathed. Petitioner fled on foot.

Police responded to a report of gunshots and a badly bleeding victim. When a K-9 unit arrived on site, the tracking dog picked up the scent of petitioner and followed it to beneath a bridge. Petitioner emerged from under the bridge screaming and crying. The officers stopped and handcuffed him with guns drawn. The dog continued to follow Petitioner's scent and uncovered a .40 caliber handgun and some clothing nearby. Police transported Petitioner to a police building and questioned him about the shooting. He informed the detective that a white male named Zach was the shooter, and identified one of Petitioner's friends who was at the scene who could corroborate the story. After the friend was

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 3

summoned, he informed the detective that Petitioner was the shooter and provided the identity of another eyewitness—who also identified the petitioner as the shooter. Both testified at trial. Confronted with these statements, Petitioner admitted to lying and admitted to committing the shooting.

Petitioner was charged with one count of attempted first degree murder, two counts of first degree assault, two counts of second degree assault, possession of a stolen firearm, and second degree unlawful possession of a firearm. Prior to trial, Petitioner's motion to suppress physical evidence and incriminating statements was denied. At trial, the detective testified that Petitioner's two friends informed him Petitioner was the shooter prior to the detective's second interview with Petitioner. Defense counsel objected on hearsay grounds and moved for a mistrial. The trial judge denied the motion and overruled the objection, noting the testimony was admissible because it provided context and background for the detective's decision to re-interview the petitioner. Defense counsel was invited to—but did not—submit a limiting instruction.

The final jury instructions at trial did not contain any language regarding juror unanimity or the election of a particular criminal act that the jury was to evaluate in regards to the second degree assault charges. The state elected a particular act during its closing argument. Ultimately, Petitioner was convicted on all charges and sentenced to 432 months of confinement.

### Procedural History

After his conviction, Petitioner appealed to the Washington Court of Appeals. Petitioner challenged the denial of his motion to suppress, the "to-convict" jury instructions for the second-degree assault counts for lacking a unanimity requirement, and the trial court's admission of the hearsay testimony. The Court of Appeals rejected those arguments on March 1, 2011 and affirmed Petitioner's conviction. On July 13, 2011, the Supreme Court of Washington denied review of Petitioner's discretionary appeal, which challenged the denial of

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 4

the motion to suppress, and the admission of hearsay evidence. A mandate was issued by the Court of Appeals on July 27, 2011.

On July 23, 2012, Petitioner filed a pro se personal restraint petition ("PRP") in the Washington Court of Appeals. Petitioner raised ten grounds for relief, most of which related to the credibility of witnesses. The Court of Appeals interpreted the PRP to raise issues relating to the scope of the *Terry* stop and the admissibility of evidence, the sufficiency of the evidence, ineffective assistance of counsel, and a racially biased jury. The Court of Appeals denied the PRP finding that Petitioner's *Terry* claim did not implicate his Fourth Amendment rights and did not require reconsideration. The appeals court also found that the evidence presented at trial was sufficient to support his conviction despite some conflicting testimony and some witness credibility concerns. Additionally, the Court of Appeals found that Petitioner failed to demonstrate his attorney's performance fell below an objective standard of reasonableness or that he was prejudiced by the performance. Lastly, the appeals court rejected Petitioner's claim of a racially biased jury explaining that Petitioner provided no evidence that non-Caucasians were purposefully excluded or that the jury had a racial bias.

Following the Court of Appeals denial of his PRP, Petitioner was granted a sixty day extension to file his Motion for Discretionary Review to the Supreme Court of Washington. In his motion, Petitioner raised four issues including the *Terry* claim, a claim he was subjected to brutal conditions amounting to mental torture resulting in his confession, an allegation that the consent waiver he signed to permit a search of his apartment was coerced, and a claim that the Chief Judge of the Court of Appeals abused his discretion. On September 30, 2013, the Supreme Court of Washington denied review of Petitioner's PRP. The ruling stated the *Terry* claim and testimony from a detective were raised on direct appeal and rejected on the merits. The Court found the bar to resurrect those issues had not been met. The ruling also found that several of the issues raised in the motion for

discretionary review had not been raised in the initial PRP and could not be raised for the first time at that juncture. A certificate of finality was issued declaring December 27, 2013 as the date the Court of Appeals ruling on the PRP became final.

### Analysis

In his petition for habeas corpus ad subjiciendum, under 28 U.S.C. § 2254, Petitioner raises three grounds for relief. First, he contends he was illegally detained by the police. Second, Petitioner alleges his confession was involuntary and was coerced through mental torture, threats, intimidation and sleep deprivation. Third, he contends the consent he gave to search his apartment was similarly coerced. The petition must be denied for being untimely.

AEDPA introduced a one-year period of limitations for the filing of an application for a writ of habeas corpus under § 2254. 28 U.S.C. § 2244(d)(1). That period begins from the latest of the date on which 1) the judgment became final from the conclusion of direct review or the expiration of time for seeking such; 2) the impediment to filing an application created by a state action violating the Constitution is removed, if the applicant was prevented from filing due to such action; 3) the constitutional right asserted was first recognized by the Supreme Court, if it has been made retroactively applicable; or 4) the factual predicate of the claim(s) presented could have been discovered through due diligence. This one-year limit is tolled during the time which a properly filed application for post-conviction or other collateral review is pending in a state court. § 2244(d)(2).

In this case, Petitioner makes no argument that any but the first measure applies. A judgment becomes final after the period which a petitioner could file a petition for writ of certiorari to the United States Supreme Court expires—whether he actually filed or not. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). A petitioner has ninety days after the judgment, or denial of review, of a state's highest court to file a petition for a writ of certiorari. Sup. Ct. R. 13. Here,

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 6

Petitioner's convictions were final on October 11, 2011, ninety days after the Supreme Court of Washington denied review of his direct appeal. In other words, Petitioner's one-year clock began ticking on October 11, 2011. As noted, Petitioner's clock is paused while a properly filed application for post-conviction relief is pending in state court. Petitioner's PRP was received by the Court of Appeals on July 23, 2012. It was signed and notarized on July 17, 2012.

Although it is not clear from the record that the Mail Box Rule would apply, *see Houston v. Lack*, the Court will give Petitioner the benefit of the rule for these calculations. 487 U.S. 266 (1988). Thus, 280 days elapsed from the time Petitioner's convictions became final until he filed his PRP, tolling his one year clock with eighty-five days remaining. Petitioner's time remained tolled throughout the pendency of his PRP and his appeal of the PRP to the state supreme court. The Washington Court of Appeals dismissed the PRP on February 14, 2013. After an extension of time was granted, Petitioner's Motion for Discretionary review of his PRP was denied by the Supreme Court of Washington on September 30, 2013. *White v. Klitzkie*, 281 F.3d 920, 923 n. 4 (9th Cir. 2002) (stating that the decision of the high court, rather than the entry of a mandate, is what signals the conclusion of review). It is at this time that Petitioner's one-year clock begins ticking again. Petitioner is not entitled to a new one-year time period after his PRP was dismissed. *See Patterson v. Stewart*, 251 F.3d 1243, 1247 (9th Cir. 2001) (explaining how statutory tolling works under AEDPA). Therefore, Petitioner had eighty-five days from September 30, 2013 to file a habeas petition under AEDPA before it became time-barred. Accordingly, his deadline was December 24, 2013. Unfortunately, Petitioner did not sign (and presumably send) this habeas corpus petition until July 3, 2014. This was more than 190 days after the deadline expired. For this reason alone, Petitioner's habeas corpus ad subjiciendum petition must be denied. If this deadline seems harsh, it is because it is harsh, but it is also the law as set down by Congress.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 7

### *Evidentiary Hearing*

Petitioner does not ask for, and the Court sees no reason, for an evidentiary hearing to be held. AEDPA does not permit an evidentiary hearing unless the applicant can show that his claim relies on either a new rule of constitutional law that was made retroactive by the Supreme Court, or upon a factual predicate that could not have been previously discovered through the exercise of due diligence. § 2254(e)(2)(A). Additionally, the applicant must show the facts underlying the claim would be sufficient to establish, by clear and convincing evidence, that but for constitutional error, the applicant would not have been found guilty of the underlying offense by any reasonable factfinder. § 2254(e)(2)(B). Further, a hearing is not required when the claims presented are purely legal and can be resolved with reference to the state court record. *See Campbell v. Wood*, 18 F.3d 662, 667 (9th Cir. 1994). Here, Petitioner makes none of the required showings and the claims could be resolved with reference to the state court record, if needed. Accordingly, an evidentiary hearing is unnecessary.

### *Certificate of Appealability*

Rule 11(a) of the Federal Rules Governing Section 2254 and 2255 Proceedings require this Court to issue or deny a certificate of appealability when it issues its final order. The Court finds additional briefing on the matter unnecessary. Section 2253(c)(2) of AEDPA states that a certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." The applicant needs to show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court finds an appeal would not raise material and debatable questions. Thus, the Court declines to issue a certificate of appealability.

//

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 8

*Conclusion*

Because the applicant failed to file his petition for habeas corpus within the one-year period of limitations from the finality of his state court conviction, tolled while his PRP was pending, his petition is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **DISMISSED,** with prejudice.

2. The Court declines to issue a certificate of appealability. Petitioner may still request a certificate of appealability from the Ninth Circuit Court of Appeals pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1.

3. Any pending hearings and other deadlines are **stricken**.

4. This file shall be **closed** and **judgment entered** for Respondent.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 6th day of August 2015.



Stanley A. Bastian
United States District Judge

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS ~ 9